Ethan D. Thomas, Utah Bar #15751
LITTLER MENDELSON, P.C.
8474 Rozita Lee Avenue, Suite 200
Las Vegas, NV 89113
T: 702.862.7709 / F: 702.920.8150
edthomas@littler.com

Daniel L. Nash (*pro hac vice* forthcoming)
Nathan J. Oleson (*pro hac vice* forthcoming)
Amanda S. McGinn (*pro hac vice* forthcoming)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW, Suite 400
Washington DC 20006
T: 202.772.2524 / F: 202.609.8951
dnash@littler.com
noleson@littler.com
amcginn@littler.com

*Attorneys for Defendant*
*MAJOR LEAGUE SOCCER, L.L.C.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| Jeffrey Dewsnup,<br><br>        Plaintiff,<br><br>v.<br><br>Utah Soccer Stadium Owner, LLC DBA Real Salt Lake; Major League Soccer, L.L.C.; United States Soccer Federation, Inc; Ignacio Hernandez; Aaron Herrera; David Ochoa; Tate Schmitt; Justin Glad;<br><br>        Defendants. | **DEFENDANT MAJOR LEAGUE SOCCER, L.L.C.'S NOTICE OF REMOVAL**<br><br>Case No. _____ |

**TO:    CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

Please take notice that Defendant Major League Soccer, L.L.C. ("MLS") hereby removes

this civil action to the United States District Court for the District of Utah from the Third Judicial District Court, Salt Lake County, Utah pursuant to 28 U.S.C. §§ 1441 and 1446. Removal is made pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a), on the basis of federal question jurisdiction. The grounds for removal are stated as follows:

## BACKGROUND

1. On May 20, 2026, Plaintiff Jeffrey Dewsnup ("Plaintiff") filed a Complaint against MLS, Utah Soccer Stadium Owner LLC d/b/a Real Salt Lake ("RSL"), United States Soccer Federation Inc. ("USSF"), Ignacio Hernandez, Aaron Herrera, David Ochoa, Tate Schmitt, and Justen Glad in the Third Judicial District Court, Salt Lake County, Utah. Attached as Exhibits 1-2 to the Declaration of Ethan Thomas ("Thomas Decl.") ¶ 2, are true and correct copies of the Complaint and State Court Docket Sheet.

2. On May 26, 2026, MLS was served with the Complaint and a Summons via certified mail. *See* Thomas Decl. ¶ 3, Ex. 3. This Notice of Removal is being filed within 30 days of service of the Complaint on MLS. *See* 28 U.S.C. § 1446(b).

3. Plaintiff is a professional soccer player who signed a four-year guaranteed contract with MLS in December 2020 when he was 16 years old. *See* Compl. ¶ 18; *see also* Thomas Decl. ¶ 5, Ex. 5. Plaintiff alleges that he played for RSL, an MLS Team, from 2020 to April 2022, when he resigned. *See* Compl. ¶¶ 18, 25. Plaintiff entered into a Mutual Termination Agreement with MLS on March 6, 2023. *See* Thomas Decl. ¶ 6, Ex. 6.[1]

4. Plaintiff alleges that MLS and RSL owed him a "duty of care as a minor child in

---

[1] "When courts review a notice of removal for jurisdiction, they may consider the complaint as well as documents attached to the notice of removal." *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1191 (10th Cir. 2024) (citing *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1247 n.1 (10th Cir. 2022)).

their custody [and] control" including duties as to the "supervision, transportation, housing, training, overseeing his medical including medical injuries, and protecting a vulnerable minor child placed into an adult professional environment without parental supervision." Compl. ¶¶ 27, 30.

5.      Plaintiff further alleges that MLS and RSL breached these duties by failing to adopt or enforce policies to protect him, resulting in physical and sexual harassment and abuse within the locker room, and by RSL's goalkeeping coach, Ignacio Hernandez, who Plaintiff alleges "forced [him] to train on an injured shoulder in 2021 after accusing Plaintiff of faking the injury, causing the shoulder injury to worsen and requiring additional medical treatment." *Id.* ¶¶ 32-42.

6.      Based on these allegations, Plaintiff brings negligence claims against MLS and RSL (as well as USSF), and a claim for intentional infliction of emotional distress ("IIED") against RSL. *Id.* ¶¶ 27-45, 60-65. Plaintiff also brings a declaratory judgment claim against MLS, alleging that the release agreement he signed as part of the mutual termination is void and unenforceable because, among other reasons, it lacked consideration. *Id.* ¶¶ 84-92. In addition to the claims against MLS and RSL, Plaintiff brings an assault and battery claim against Herrera, Schmitt, and Glad; an IIED claim against Hernandez, Herrera, Ochoa, Schmitt, and Glad; and a civil claim for sexual abuse of a minor against Herrera, Schmitt, and Glad. *Id.* ¶¶ 46-59, 66-73.

7.      Plaintiff, MLS, and RSL are bound by a collective bargaining agreement ("CBA") governing the terms and conditions of employment of MLS players. The CBA was negotiated between MLS and the MLS Players Association ("MLSPA"), the sole and exclusive collective bargaining representative of all MLS players (including Plaintiff). *See* Thomas Decl. ¶ 4, Ex. 4 (hereinafter "2020 CBA"). The CBA governs the relative rights and responsibilities of MLS, the

3

MLS Teams, the MLSPA, and the players with respect to, among other things, player medical care and treatment, health and safety, conduct, and discipline. *See, e.g.*, 2020 CBA, Arts. 8 (Player Obligations), 9 (Medical Examinations; Injury Guarantee), 20 (Discipline; Rules and Regulations), and 24 (Committees; Playing Conditions). The CBA also incorporates the Standard Player Agreement ("SPA"), which governs a player's obligations and compensation, and details the terms under which the SPA may be terminated. *See* 2020 CBA, Arts. 10 (Compensation, Expenses, and League Player Expenditures), 18 (Standard Player Agreement) & Ex. 1.

**<u>GROUNDS FOR REMOVAL</u>**

8. This Court has removal jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 29 U.S.C. § 185(a), as Plaintiff's claims arise under the laws of the United States.

9. A defendant may remove an action to federal court under 28 U.S.C. § 1441(a) if the plaintiff's complaint presents a federal question. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also* 28 U.S.C. § 1331.

10. In general, under the "well-pleaded complaint" rule, "a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996)).

11. However, under the "complete preemption" doctrine, a complaint alleging only a state law cause of action may be removed to federal court where, as here, federal preemption makes the state law claim "necessarily federal in character." *See id.* at 1204; *see also Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

4

12.    Federal question jurisdiction exists in this case because Plaintiff's claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Although Plaintiff's claims against MLS and RSL are styled as state law tort claims, federal courts "look beyond the allegations of the complaint, often to the petition for removal, to determine whether the wrong complained of arose from a breach of obligations under a collective bargaining agreement."  *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302-03 (10th Cir. 2000); *see also Ortega v. New Mexico Legal Aid, Inc.*, 643 F. App'x 774, 777 (10th Cir. 2016) ("It is well established that . . . claims alleging a breach of a CBA are considered to arise under § 301 even if they ostensibly are pleaded as state-law claims").

13.    Section 301 of the LMRA preempts state law claims that are "founded directly on rights created by collective-bargaining agreements" or that are "substantially dependent" on analysis of the provisions of a collective bargaining agreement.  *Cisneros*, 217 F.3d at 1302.  Thus, "[Section] 301 preemption extends to *any* state law claim that requires interpretation of *any* CBA term."  *Rael v. Smith's Food & Drug Ctrs., Inc.*, 712 F. App'x 802, 804-05, 809 (10th Cir. 2017) (emphasis in original); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1208 (10th Cir. 2001) (considering "whether evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract") (emphasis in original).

14.    Applying Section 301, courts around the country have concluded that state law tort claims involving professional athletes are preempted by the LMRA and properly subject to removal when they require the court to interpret a collective bargaining agreement.  *See, e.g.*, *Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009) (negligence claims asserted against NFL for alleged failure to protect players from harmful effects of dietary supplement were found completely preempted); *Duerson v. Nat'l Football League*, No. 12 C 2513, 2012 WL

1658353, at *6 (N.D. Ill. May 11, 2012) (negligence claim alleging that NFL was liable for concussion-related injuries was found completely preempted by LMRA and subject to removal); *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 909 (S.D. Ohio 2007) (holding tort claim sounding in negligence was preempted because its resolution was "'inextricably intertwined and substantially dependent' upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players"); *Sherwin v. Indianapolis Colts*, 752 F. Supp. 1172, 1178 (N.D.N.Y. 1990) (holding negligence claims were preempted because the club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the agreements").

15.     Likewise, courts have regularly held that state law tort claims, including those predicated on allegations of workplace harassment, are preempted by the LMRA where the claim requires interpretation of a collective bargaining agreement. *See, e.g.*, *Rael*, 712 F. App'x at 806-07 (IIED and tort claim based on harassment preempted because it was "necessary to construe the applicable CBA to determine whether the supervisor's alleged conduct was outrageous"); *Steinbach v. Dillon Companies, Inc.*, 253 F.3d 538, 543 (10th Cir. 2001) (same); *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1022 (10th Cir. 1990) (same); *Retherford v. AT & T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 972 (Utah 1992) (same); *see also Martinez v. United Parcel Serv., Inc.*, No. CIV. 07-635 JEC/LFG, 2008 WL 11451940, at *3 (D.N.M. Feb. 25, 2008) (finding negligence claims preempted because "to determine whether UPS knew or reasonably should have known that Plaintiff may be harmed as a result of the acts or omissions of the Individual Defendants, it would necessarily have to consider UPS' duties as stated in the CBA").

16.     The same result is warranted here because Plaintiff's purported "negligence" and "IIED" claims against the MLS and RSL are inextricably intertwined with, and necessarily require

6

interpretation of, the CBA.

17.     To prove his negligence claim, Plaintiff must show that MLS and RSL owed him a duty of care and breached that duty.  *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228 (2012).  In cases where, like here, a plaintiff alleges "nonfeasance" or "a failure to take positive steps" to protect them from harm, a duty generally only arises in cases of "special legal relationships."  *Id.*

18.     Here, the relationship between Plaintiff and MLS and RSL is that of a professional soccer player and is governed by the terms and conditions of employment detailed in the CBA. Thus, whether MLS or RSL owed Plaintiff duties or breached those duties "cannot be determined without examining the parties' legal relationship and expectations as established by the CBA." *Williams*, 582 F.3d at 881; *see also Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 28, 54 P.3d 1054, 1062 (2002) ("Because this tort claim depends upon the employer-employee relationship, evaluation of the claim would necessarily involve evaluation of the contract-based duties owed by the defendants to plaintiffs, which would require interpretation of the collective bargaining agreement.").

19.     For example, to determine the nature and scope of any duties MLS or RSL owed to Plaintiff with respect to "overseeing [Plaintiff's] medical including medical injuries" or his "training" (Compl. ¶ 30), the Court must interpret Article 9 of the CBA, which outlines the standard of care owed to players with respect to medical treatment for injuries.  In particular, Article 9 places obligations on MLS Teams and their physicians to provide "high quality health care that is reasonably appropriate to [players'] needs as elite professional soccer players," and further establishes detailed procedures "to determine a Player's Fitness" to play soccer, and with respect to the treatment of any player's injuries.  2020 CBA, Art. 9, §§ 9.3(i), 9.4, 9.8.  The Court

must also interpret these obligations, as well as the disclosure obligations placed on Plaintiff in the CBA (*see* 2020 CBA, Art. 9, § 9.5), to analyze whether MLS or RSL breached any such duty by allegedly forcing him to play through injuries.

20.    To determine the scope of any duty to "protect[]" Plaintiff from the alleged abuse in the locker rooms (Compl. ¶¶ 27, 30, 32-42), and whether MLS or RSL breached any such duty, the Court will also need to interpret provisions of the CBA relating to player health and safety. For example, Article 24, Section 24.5 of the CBA establishes a Joint Health and Safety Committee with members from MLS and MLSPA to discuss and make recommendations relating to player health and safety.  The Court will also need to interpret the various rights and obligations outlined in the CBA's detailed provisions and procedures relating to conduct and discipline for "on-field misconduct," which expressly includes conduct in the locker rooms, to determine the authority of MLS or RLS to take action under the circumstances.  *See* 2020 CBA, Art. 20, § 20.2(i).

21.    Likewise, Plaintiff's IIED claim against RSL requires the Court to interpret the various rights and obligations, and the authority, of RSL under each of these provisions of the CBA before it can determine whether RSL's actions (or inaction) in response to the alleged conduct were "outrageous."  *See Rael*, 712 F. App'x at 806-07; *Mangrum v. US W. Comm'ns, Inc.*, 961 F. Supp. 1510, 1517 (D. Utah 1996) ("An analysis of whether the employer acted properly or not will inevitably require an analysis of what the collective bargaining agreement permitted.").

22.    Finally, with respect to Plaintiff's declaratory judgment claim against MLS, interpretation of the CBA is necessary to evaluate Plaintiff's claim that the termination agreement he signed when he resigned was not supported by adequate consideration.  The CBA includes detailed provisions regarding player compensation and the circumstances under which MLS and its players may terminate an SPA.  *See, e.g.*, 2020 CBA, Art. 10, § 10.27, Art. 18, §§ 18.4, 18.6,

and 18.9-18.12. This includes provisions permitting MLS to "buy out" a player's contract under certain conditions. *Id.*, Art. 10, § 10.27. To resolve Plaintiff's declaratory judgment claim, the court must interpret the CBA to determine whether MLS and Plaintiff were entitled to negotiate an early termination of his SPA under the buyout provision and, if so, whether the money he received and the release of his obligation to continue to play was valid consideration for the release in light of the parties' rights and obligations under the CBA and SPA. This interpretation must be consistent with the CBA and federal common law. Otherwise, applying a different standard to Plaintiff under state law that gives him additional rights beyond those in the CBA would "put [him] in a more advantageous position than [other players] bound by the collective bargaining agreement, thereby undermining the collective bargaining unit." *Retherford*, 844 P.2d at 969-70.

23.    Thus, given the broad preemptive reach of Section 301 of the LMRA, all of Plaintiff's claims against MLS and RSL are completely preempted and properly removable on the basis of federal question jurisdiction.

## SUPPLEMENTAL JURISDICTION

24.    With respect to any remaining state-law claims in the Complaint that are not preempted by Section 301 of the LMRA, removal of the entire action is still authorized under 28 U.S.C. § 1441(c) pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

25.    The Court can exercise concurrent jurisdiction of any state law claims that "form part of the same case or controversy" as the federal law claims. 28 U.S.C. § 1367(a). Here, all of Plaintiff's claims in the Complaint stem from interactions he had as a professional soccer player for MLS and RSL. The preempted claims and remaining state-law claims thus share a "common nucleus of operative fact[s] . . . such that [Plaintiff] would ordinarily be expected to try them all

9

in one judicial [setting]." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

## REMOVAL IS PROCEDURALLY PROPER

26.     Pursuant to 28 U.S.C. § 1446(a), removal to the United States District Court for the District of Utah is proper because this is the federal district court for the district and division embracing the place where the state court suit is pending.

27.     As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders served upon MLS are being filed with this Notice of Removal. *See* Thomas Decl. ¶ 2, Exs. 1-2.

28.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiff, and a copy of this Notice of Removal will be filed with the clerk of the Third Judicial District Court, Salt Lake County, Utah, to affect the removal of this civil action.

29.     All defendants who have been properly joined and served with state-court process have consented to removal and join this Notice of Removal. *See* 28 U.S.C. § 1446(b)(2)(A); *see also* Thomas Decl. ¶ 7, Exs. 7 to 11.

30.     In filing this Notice of Removal, MLS reserves all substantive and procedural claims, counterclaims and defenses, including but not limited to defenses respecting service of process, venue, and personal jurisdiction.

/ / /


/ / /


/ / /


10

WHEREFORE, MLS respectfully requests that all proceedings in the state court action be discontinued, and that this action proceed in the United States District Court for the District of Utah as an action properly removed to it.

Dated:  June 24, 2026

LITTLER MENDELSON, P.C.

*/s/ Ethan D. Thomas*
Ethan D. Thomas, Esq.
Nathan T. Boone, Esq.
Danielle K. Herring, Esq.
Amanda S. McGinn, Esq.


*Attorneys for Defendant*
*MAJOR LEAGUE SOCCER, L.L.C.*

## PROOF OF SERVICE

I, Joanne Conti, HEREBY CERTIFY that on the 24th day of June, 2026, I electronically filed the

foregoing **DEFENDANT MAJOR LEAGUE SOCCER, L.L.C.'S NOTICE OF REMOVAL**

using the CM/ECF system which sent notification of such filing to the following:

Brian K. Jackson, Esq. (15296)
Brian K. Jackson LLC
503 W. 2600 S. Suite 200
Bountiful, Utah 84010
brianj@bjacksonlaw.com

Attorney for Plaintiff
JEFFREY DEWSNUP

/s/ Joanne Conti
Joanne Conti