Ryan P. Atkinson (Utah Bar #10673)
Scarlet R. Smith (Utah Bar #15024)
Davis P. Pope (Utah Bar #18076)
**STRONG & HANNI, P.C.**
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
ratkinson@strongandhanni.com
ssmith@strongandhanni.com
dpope@strongandhanni.com
*Attorneys for Defendant United States Soccer Federation, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| JEFFREY DEWSNUP, an individual <br> Plaintiff, <br><br> vs. <br><br> UTAH SOCCER STADIUM OWNER, LLC dba REAL SALT LAKE; MAJOR LEAGUE SOCCER, LLC; UNITED STATES SOCCER FEDERATION, INC.; IGNACIO HERNANDEZ; AARON HERRERA; DAVID OCHOA; TATE SCHMITT; and JUSTIN GLAD. <br><br> Defendants. | **DEFENDANT UNITED STATES SOCCER FEDERATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** <br><br> Case No. 2:26-cv-00577 – RJS-DAO <br><br> Judge Robert J. Shelby |

Defendant United States Soccer Federation, Inc. ("USSF"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR 7-1, respectfully moves the Court to dismiss all claims asserted against it in Plaintiff's Complaint. USSF is named only in Plaintiff's First Cause of Action for negligence. USSF seeks dismissal on two independent grounds: (1) the Court lacks personal jurisdiction over USSF, which is neither "at home" in Utah nor the source of any Utah-directed conduct giving rise to Plaintiff's claims; and (2) alternatively, the Complaint fails to state a claim against USSF.

## INTRODUCTION

This case concerns alleged misconduct in the locker room and on the practice field of a professional soccer organization. Plaintiff alleges that, after signing a professional player contract with Major League Soccer ("MLS") and being assigned to the Real Salt Lake organization ("RSL"), he was mistreated by an RSL coach and abused by fellow professional players. While USSF does not condone any such actions, if true, those allegations are directed elsewhere. They are not allegations of anything USSF did. Plaintiff's theory substitutes USSF's status as a national governing body for facts showing USSF conduct. But status is not conduct, and jurisdiction, duty, and causation each turn on the latter.

U.S. Soccer is the National Governing Body for the sport of soccer under the federal Ted Stevens Olympic and Amateur Sports Act, and is the United States' representative member in FIFA. U.S. Soccer's authority and responsibility includes overseeing administration of the sport at the national, international, and Olympic levels. USSF is a New York not-for-profit corporation headquartered in Fayetteville, Georgia. It directs, controls, and coordinates its business from Georgia—not from Utah. (Anna Lavis Declaration ¶¶ 2–4, attached as Exhibit A.) More to the point, it does not direct business in the state of Utah. It did not employ Plaintiff, did not employ the individuals who allegedly harmed him, did not own or operate the facility where the alleged conduct occurred, did not house or transport Plaintiff, and was not present for any of the alleged actions. Plaintiff's theory is that USSF, as the sport's national governing body, should in general have done more to prevent misconduct at a professional club it does not operate. That theory cannot support jurisdiction over USSF in Utah, and it does not state a claim upon which relief can be granted.

The claims against USSF should be dismissed for two independent reasons. First, the Court lacks personal jurisdiction. USSF is not subject to general jurisdiction because Utah is not its "nerve center." Plaintiff's own allegations show that it is an out-of-state corporation headquartered in a state other than Utah. USSF is not subject to specific jurisdiction because Plaintiff's claims do not arise out of or relate to anything USSF purposefully directed at Utah. A federal court dismissed materially identical negligence claims against this defendant last year for exactly these reasons. *See Doe v. New Orleans Soccer Acad.*, No. 8:24-cv-02775-LKG, slip op. at 9–13 (D. Md. Aug. 20, 2025) (unpublished), ECF No. 63 (attached as Exhibit B).

Second, and in the alternative, the Complaint fails to state a claim upon which relief can be granted because USSF owed Plaintiff no legal duty of care, the federal statutory scheme Plaintiff invokes creates no private right of action, and there is no proximate causation between USSF and the claimed injuries.

### STATEMENT OF MATERIAL FACTS

Solely for the purposes of this Motion, USSF accepts the well-pleaded, non-conclusory factual allegations of the Complaint as true.

Plaintiff alleges that in December 2020, when he was sixteen, he signed a four-year guaranteed *professional* player contract and was assigned to the RSL organization. Compl. ¶ 18. Plaintiff alleges MLS "is the governing body for professional soccer in the United States" and exercises "centralized control over professional player contracts, league operations, player policies, and club governance." Compl. ¶¶ 5, 15. He alleges that all of the conduct at issue occurred at RSL's facility and locker room in Salt Lake County. Compl. ¶¶ 12, 20–25, 47.

Plaintiff alleges that RSL's goalkeeper coach, Defendant Hernandez, mistreated him during training, Compl. ¶¶ 22, 53, and that other player-defendants engaged in sexualized and

abusive locker-room conduct, Compl. ¶¶ 23, 41, 47–49. Plaintiff alleges that individual defendants were employed by RSL and acted as RSL's agents. Compl. ¶¶ 7, 9-11. He alleges he was "under the exclusive supervision of RSL during training, games, travel, education and locker room activities." Compl. ¶¶ 24-25, 40.

As to USSF specifically, the Complaint alleges that USSF "is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois." Compl. ¶ 6. It also alleges that, as the national governing body, USSF conducts "governance, oversight, training, sanctioning, regulation, and safety-related administration" of organized soccer activities in Utah, including camps, coaching-license and referee programs, and oversight of the "Utah Soccer Federation." Compl. ¶ 16.

Although Plaintiff also alleges that he participated in USSF's U-17 and U-20 national-team programs, Compl. ¶¶ 16, 18, none of the alleged misconduct was alleged to have occurred at or in connection with these programs. And these allegations have nothing to do with the conduct at issue or with USSF's ties to Utah. Indeed, the Complaint alleges only in conclusory terms that USSF "conducts substantial business in Utah." Compl. ¶ 16. It does not allege that USSF employed any individual defendant, owned or operated the facility at issue, or was present for any of the alleged conduct. There is no allegation that USSF directs business from Utah. Nor is there any allegation that any alleged misconduct was directly related to Utah-directed activity by USSF. Accordingly, no allegations can support that Utah is USSF's "nerve center" for the purposes of general personal jurisdiction and no allegations show USSF directed activity at Utah. USSF is named only in the First Cause of Action for negligence. Compl. ¶¶ 27-45. For all these reasons, the Complaint fails to allege minimum contacts sufficient to warrant jurisdiction as to USSF.

USSF is a New York not-for-profit corporation. (Lavis Decl. ¶ 2.) Its headquarters are in Fayetteville, Georgia, where its executive officers are located, and from which its nationwide operations are directed, controlled, and coordinated. (*Id.* ¶¶ 3–4.) As the sport's national governing body, USSF sanctions leagues and state associations, administers coaching-education, licensing, and referee-development programs, fields the United States national teams, and promulgates policies applicable to its Organization Members—functions it performs from Georgia with respect to all fifty states. (*Id.* ¶¶ 4, 9.) USSF maintains no office in Utah, has no full-time or regular part-time employees based in Utah, and owns no real property in Utah. (*Id.* ¶¶ 6–7.) USSF employs more than 1300 employees, and none of USSF's regular full-time and part-time employees reside or work in Utah. (*Id.* ¶ 7.) Moreover, only fifteen active "network employees"—temporary, part-time workers engaged for a specific event or a discrete, often remote, project—reside in Utah. (*Id.* ¶ 7.) None is alleged to have any connection to Plaintiff or to the events at issue.

### LEGAL STANDARD

On a Rule 12(b)(2) motion decided without an evidentiary hearing, the plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction, and the court accepts as true only well-pleaded, non-conclusory jurisdictional allegations. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Because this action was removed, the Court's jurisdiction is measured by Utah law. Under Federal Rule of Civil Procedure 4(k)(1)(A), the Court may exercise personal jurisdiction to the same extent as a Utah state court. Utah's long-arm statute extends "to the fullest extent permitted by the due process clause of the Fourteenth Amendment," Utah Code Ann. §§ 78B-3-201, 78B-3-205, so the inquiry collapses into a single due-process question, *see Old Republic*, 877 F.3d at 903.

On a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and the court disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although consideration of matters outside the pleadings ordinarily requires converting a Rule 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), the Tenth Circuit recognizes an exception: where a document is "referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss," and such document is "not 'outside the pleading.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) (holding district court "properly considered" an unattached letter that was "indisputably authentic and central to" the plaintiff's claim on an unconverted 12(b)(6) motion); *accord Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103–05 (10th Cir. 2017).

**<u>ARGUMENT</u>**

## I.  The Court Lacks Personal Jurisdiction over USSF.

Due process recognizes two types of personal jurisdiction: general (all-purpose) jurisdiction and specific (case-linked) jurisdiction, and the two are analyzed separately. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011); *Old Republic*, 877 F.3d at 903; *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839–40 (10th Cir. 2020) (affirming Judge Shelby's dismissal of a complaint for lack of personal jurisdiction). To proceed against USSF in Utah, Plaintiff must establish one or the other. But he can establish neither, so the claims against USSF must be dismissed.

6

### A.  <u>No general personal jurisdiction exists in Utah.</u>

A corporation is subject to general jurisdiction only where its affiliations are "so 'continuous and systematic' as to render [it] essentially at home in the forum State," paradigmatically its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014); *Old Republic*, 877 F.3d at 903–904.

While the place of incorporation may be plain, the principal place of business has proved harder to determine. As such, "in an effort to find a single, more uniform interpretation," the United States Supreme Court concluded "that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). This is generally called the "nerve center." *Id.* "And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93. Moreover, the principal place of business is a singular place which requires the court "to pick out the 'main, prominent' or 'leading' place." *Id.*

Accordingly, for purposes of determining whether a corporation is 'at home,' its principal place of business is its nerve center—the headquarters from which its officers direct, control, and coordinate its activities—not any forum in which the corporation happens to transact business.

Plaintiff's own pleading forecloses general jurisdiction here. The Complaint alleges USSF "is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois." Compl ¶ 6. Accepting those allegations as true, no general personal jurisdiction exists.[1]

Contrary to Plaintiff's allegations, USSF is actually a New York not-for-profit corporation with its headquarters in Fayetteville, Georgia. Lavis Decl. ¶¶ 2–4; *see also Doe v. New Orleans Soccer Acad.*, No. 8:24-cv-02775-LKG, slip op. at 9 (D. Md. Aug. 20, 2025) (unpublished), ECF No. 63, attached as Ex. B (finding no general personal jurisdiction in Maryland because USSF's incorporation and principal place of business is elsewhere). Either way, the end result is the same— this Court lacks general jurisdiction over USSF in this matter.

Plaintiff's conclusory allegation that USSF "conducts substantial business in Utah," Compl. ¶ 16, does not change the result. After *Daimler*, the question "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state.'" *Daimler*, 571 U.S. at 138–39. Even substantial, ongoing in-state operations are insufficient. In *BNSF Railway Co. v. Tyrrell*, the Supreme Court held that a railroad with more than 2,000 miles of track and more than 2,000 employees in the forum was not subject to general jurisdiction there, because those contacts did not render it at home. 581 U.S. 402, 414 (2017). USSF's alleged Utah activities (e.g., sanctioning the state association, hosting regional camps, and administering coaching and referee programs) are a small

---

[1] Indeed, the allegation may serve as a binding judicial admission that USSF is neither incorporated nor headquartered in Utah. *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (judicial admissions are "formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute.").

fraction of a National Governing Body's nationwide operations and fall far short of the contacts held insufficient in *BNSF*.

Utah law is to the same effect. The Utah Supreme Court has long recognized that general jurisdiction—the power to hear claims "without regard to the subject of the claim asserted"—exists only where the defendant is "conducting substantial and continuous local activity in the forum state." *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992); *accord Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 11, 137 P.3d 706 (general jurisdiction "only exists when the defendant conducts 'substantial and continuous local activity in the forum state'"). In *Arguello*, the court affirmed the dismissal of a nonresident manufacturer for lack of personal jurisdiction even though its product had reached Utah and injured a Utah resident, because the manufacturer itself conducted no substantial local activity here. *Id.* at 1122. USSF—with no office, no regular employees, and no property in Utah—does not approach Utah's own threshold, much less the far more demanding "at home" standard of *Daimler* and *BNSF*.

### B. USSF is not subject to specific jurisdiction because Plaintiff's claims do not arise out of or relate to any Utah-directed conduct by USSF.

Specific jurisdiction requires that the defendant purposefully directed its activities at the forum, that the plaintiff's claims arise out of or relate to those forum-related activities, and that the exercise of jurisdiction is reasonable. *Old Republic*, 877 F.3d at 904–05; *Dudnikov*, 514 F.3d at 1071; *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). Plaintiff satisfies none of these requirements.

First, the Complaint identifies no suit-related conduct by which USSF purposefully availed itself of Utah. The only activities it attributes to USSF are generic governing-body functions—sanctioning the state association, hosting camps, and administering coaching and referee programs.

Compl. ¶ 16. The Complaint makes clear that USSF's work is nationwide. The development of policies for uniform application to similarly situated soccer organizations across the country is not Utah-directed. Put differently, that a Utah organization was required to accept the same policies imposed on organizations nationwide reflect the geographic breadth of a national membership rule, not a deliberate decision to target Utah. *See XMission*, 955 F.3d at 846–47 (no purposeful direction where the defendant's nationwide marketing was indifferent to the physical location of its audience and did not target Utah).

Its application to an organization located here results from that organization's independent Utah operations—not from a forum-specific choice by USSF. The Complaint does not allege that USSF tailored any policy to Utah, directed any organization's implementation of it, supervised the personnel involved, inspected the facility at issue, or assumed responsibility for enforcing any policy within the professional program in which Plaintiff participated. It alleges only that USSF adopted national standards and that others allegedly failed to follow them in Utah. That sequence identifies no Utah contacts created by USSF. *See Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). USSF's connection to Utah is precisely the kind of "random, fortuitous, or attenuated" link that cannot support jurisdiction. *Dudnikov*, 514 F.3d at 1071.

Holding otherwise would expose every national association to suit in every State in which a member operates, erasing the distinction between nationwide activity and suit-related forum contacts. It would essentially eliminate the requirement of purposeful forum contact. Any national organization that publishes generally applicable standards would become subject to suit in every state whenever an independently operated affiliate allegedly violated those standards there. But nationwide applicability is not purposeful direction toward every state, and the location of an alleged policy violation cannot retroactively convert a national policy into Utah-directed conduct.

Because Plaintiff identifies no Utah-specific implementation, supervision, enforcement, or other suit-related act by USSF, the policy supplies neither purposeful availment nor the required relationship between USSF's Utah contacts and Plaintiff's claims. *See Walden*, 571 U.S. at 286; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980) (rejecting a theory under which "every seller of chattels would in effect appoint the chattel his agent for service of process"); *Ford*, 592 U.S. at 362.

And Plaintiff's claims do not arise out of or relate to USSF's own alleged Utah activities. Although that requirement does not demand strict causation, it "does not mean anything goes" and still "incorporates real limits." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). In *Parry v. Ernst Home Center Corp.*, 779 P.2d 659 (Utah 1989), the Utah Supreme Court affirmed the dismissal of foreign manufacturers whose allegedly defective product injured a Utah plaintiff, because the product reached Utah through the acts of independent distributors rather than through any Utah-directed conduct of the manufacturers themselves. The manufacturers had no office, agents, or property in Utah, solicited no business here, and rendered no services or advice here. "Without a showing of 'additional conduct,'" the court held, it was "unable to find that the eventual sale of a product in Utah justifies personal jurisdiction." *Id.* at 667.

The same logic governs USSF's national policies. A model policy promulgated for a nationwide membership "arrives" in Utah, if at all, through the independent operations of member organizations—just as the product in *Parry* arrived through independent distributors. Foreseeability that a national standard may someday be applied by some member operating in Utah is not the "additional conduct" directed at this forum that due process requires.

Additionally, USSF's "contacts with the forum State itself" matters, not its relationship with a forum resident or with third parties who independently act there. *Walden v. Fiore*, 571 U.S.

277, 284–86 (2014). The Complaint identifies the individual defendants as the employees or agents of others, Compl. ¶¶ 7, 9–11, and alleges no fact even suggesting that USSF employed, supervised, or directed any alleged tortfeasor; operated the facility at issue; or participated in the challenged conduct. The independent Utah conduct of third parties cannot be attributed to USSF. *See Walden*, 571 U.S. at 286; *Dudnikov*, 514 F.3d at 1071.

The Complaint alleges that USSF governs or sanctions the "Utah Soccer Federation," conducts camps and player evaluations, hosts events, and supports coaching-licensing and referee-development programs. Compl. ¶ 16. But there is no allegation (or even a suggestion) that Plaintiff was injured through any of those activities, that any individual defendant acted through a USSF program, or that any such activity placed Plaintiff in anyone's custody or in the locker room at issue. Nor does the Complaint allege that USSF itself administers any coaching-licensing or referee-development program in Utah compared to sanctioning the independent state association that does. Plaintiff's participation in USSF's U-17 and U-20 national-team program supplies no missing connection. No misconduct has been alleged to have occurred in those programs, and no facts alleged link them to the conduct alleged in the Complaint. *Id.* ¶¶ 16, 18.

Nor is Plaintiff's burden any lighter because he asserts a negligence claim against USSF. In *Pohl, Inc. of America v. Webelhuth*, 2008 UT 89, 201 P.3d 944, the Utah Supreme Court held that even intentional-tort claims support specific jurisdiction only where the defendant's conduct was "expressly aimed at the forum state," causing harm the defendant knew was likely to be suffered here. *Id.* ¶ 27. And the plaintiff "bears the burden of clearly alleging facts" establishing that forum-directed conduct—a burden that "cannot be satisfied by purely conclusory allegations or . . . generalized averments." *Id.* ¶¶ 29–30. Plaintiff's "governance and control" refrain is precisely the kind of generalized averment *Pohl* rejects. The Complaint alleges no fact suggesting

12

that USSF expressly aimed any conduct at Utah, at the professional program at issue, or at Plaintiff—let alone conduct from which these claims arise.

The Utah Supreme Court's leading decision on jurisdiction over a national organization confirms the gap. In *Anderson v. American Society of Plastic & Reconstructive Surgeons*, 807 P.2d 825 (Utah 1990), the court sustained jurisdiction over a national medical society—but only because the society itself directed the injurious program into Utah. Its committee "selected Salt Lake City as a program site," selected and trained the Utah physician who administered the experimental treatment (knowing he would use that training in Utah), assisted in preparing the consent form it knew would be used in Utah, and selected the monitor for treatment it anticipated would occur in Utah. *Id.* at 828. *Anderson* thus illustrates what suit-related, Utah-directed conduct by a national organization looks like—hands-on selection, training, and supervision of the very Utah program that injured the plaintiff. The Complaint alleges nothing of the kind. It does not allege that USSF selected or supervised the coaches or players involved, designed or directed the professional program in which Plaintiff participated, or administered or monitored anything at the facility where the alleged misconduct occurred. Measured against *Anderson*, *Parry*, and *Pohl*, Plaintiff's allegations fall far short of what Utah law requires. Anderson is thus not Plaintiff's analogue; it is a checklist of the suit-related Utah contacts the Complaint omits.

In sum, the Complaint's factual allegations place the alleged misconduct completely outside the scope of any USSF conduct, where Plaintiff was, by his own allegation, "under the exclusive supervision of RSL" during "training, games, travel, education and locker room activities." *Id.* ¶ 31. Those allegations in no way establish a connection to USSF.

Third, Plaintiff's conclusory "governance and control" and agency allegations cannot manufacture jurisdiction. General regulatory or supervisory authority by a national association

over local organizations does not establish that the association purposefully directed the specific conduct at issue at the forum, nor does it make local actors the association's agents. *See Walden*, 571 U.S. at 284–86 (the defendant's own forum contacts control, not the acts of third parties with forum ties); *XMission*, 955 F.3d at 847 (conduct of independent third parties cannot supply the defendant's forum contacts). Those allegations are not entitled to a presumption of truth on a jurisdictional challenge. *Old Republic*, 877 F.3d at 903 (on a jurisdictional challenge, courts accept as true only well-pled facts, as distinguished from conclusory allegations).

A federal court confronted these precise allegations against this precise defendant last year and rejected them. In *Doe*, the plaintiff sued USSF and other soccer organizations for negligence arising from the sexual abuse of a minor player, alleging that the local club "operated under [the organizations'] governance and control" and that her abuser-coach acted as their agent. No. 8:24-cv-02775-LKG, slip op. at 2-4, 11-12 (D. Md. Aug. 20, 2025) (unpublished), ECF No. 63. The court dismissed the negligence claims against USSF for lack of personal jurisdiction. It held that USSF (a New York not-for-profit corporation headquartered in Chicago at the time) was not subject to general jurisdiction; that the complaint identified no USSF business, work, or other tortious act in the forum; and that the plaintiff's "governance and control" and agency allegations were "conclusory in nature and not supported by any other facts in the complaint." *Id.* at 9, 11–12. Evidence that local organizations were merely "affiliated with" USSF did not show that USSF held, supervised, or controlled the events or actors at issue. *Id*. at 11. Notably, the court reached that result even though the alleged assault occurred in the forum state, at a Maryland tournament – because the tournament was operated by a third party and the abuser was the local club's coach, not USSF's employee or agent. *Id.* at 3, 11–12.

The disconnect is at least as stark here: Plaintiff does not allege that USSF operated, staffed, or was present at the facility at issue, the individuals who allegedly harmed him were not USSF employees or agents, and Plaintiff stated he was under the "exclusive supervision" of a person or entity other than USSF. Compl. ¶¶ 7, 9-11, 31. Although *Doe* is not binding, it is a sister federal court applying the same due-process principles that govern here, and its reasoning is directly on point.

### C. <u>Exercising jurisdiction over USSF would be unreasonable in any event.</u>

Because Plaintiff cannot show purposeful direction or a connection between USSF's forum contacts and his claims, the Court need not reach reasonableness. Regardless, requiring an out-of-state national governing body to answer in Utah for the independent conduct of a professional club and its personnel would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) (weighing the burden on the defendant, the forum State's interest, the plaintiff's interest in convenient and effective relief, the interstate system's interest in efficiency, and the States' shared substantive interests). Those factors confirm the result here. Utah's regulatory and remedial interests center on the Utah actors and facility alleged to have caused the harm, not on a national body that committed no suit-related act here. Plaintiff can pursue the entities and individuals he says employed, supervised, or harmed him without imputing their Utah contacts to USSF. And the interstate system's interest in efficient resolution is served by placing responsibility where the alleged conduct and control actually resided.

### II. In the Alternative, the Complaint Fails to State a Negligence Claim Against USSF.

USSF is named only in the negligence count. That claim fails as a matter of law for three independent reasons.

### A.  **USSF owed Plaintiff no legal duty.**

Duty is an essential, threshold element of negligence, and its existence is a question of law. *Webb v. Univ. of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906, *overruled in part on other grounds by Cope v. Utah Valley State Coll.*, 2014 UT 53, 342 P.3d 243. Utah distinguishes between misfeasance and nonfeasance. While an affirmative act may carry a duty of reasonable care, "an omission or failure to act can generally give rise to liability in the presence of some external circumstance—a special relationship." *Id*. ¶ 10. Absent such a relationship, there is no duty to control the conduct of a third party or to protect another from it. *Beach v. Univ. of Utah*, 726 P.2d 413, 415 (Utah 1986); *Owens v. Garfield*, 784 P.2d 1187, 1189 (Utah 1989).

Plaintiff's claim against USSF is one of pure nonfeasance—an alleged *failure* to adopt or enforce policies that assertedly would have prevented the harm. Compl. ¶¶ 33, 39. Plaintiff therefore must plead a special relationship with USSF. He did not plead any such special relationship, and he cannot. Special relationships arise in narrow, recognized categories in which a defendant takes custody of or assumes responsibility for another under circumstances depriving that person of ordinary self-protection. *See Beach*, 726 P.2d at 415–16; *Webb*, 2005 UT 80, ¶¶ 10–11. USSF had no custody of Plaintiff, had no control over him, and had no control over the locker room. Courts have declined to find a special relationship even where the defendant's connection to the plaintiff was far closer than any alleged connection between USSF and Plaintiff. See *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) (no special relationship obligating school officials to protect a student football player from locker-room hazing and abuse, notwithstanding the school's far closer supervisory role); *Orr v. Brigham Young Univ.*, 960 F. Supp. 1522, 1526-

28 (D. Utah 1994) (even a student-athlete's direct relationship with his university did not create a special relationship), *aff'd*, 108 F.3d 1388 (10th Cir. 1997) (unpublished table decision).

Courts addressing national sports organizations specifically have reached the same conclusion. In *Brown v. USA Taekwondo*, the California Supreme Court affirmed the dismissal of the United States Olympic Committee, concluding that national governance or safety standards are not enough to establish a duty. 483 P.3d 159 (Cal. 2021). There, minor athletes alleged that their coach sexually abused them while training and traveling to competitions. *Id.* The Olympic Committee served as the national organization for Olympic sports and oversaw each sport's national governing body, and required those bodies to adopt SafeSport programs. *Id.* at 163. The Court determined that the authority the Olympic Committee had did not establish that it could control the coach or the athletes, and there were no facts pleaded that could support a claim that the athletes in that case reasonably depended on the Olympic Committee for protection.

That allocation of duty is instructive. *Brown* allowed claims to proceed only against the entity alleged to have registered the abuser-coach and controlled his access to the sport's competitions, while affirming dismissal of the more remote national organization whose role was regulatory. USSF stands in the latter position. The Complaint does not allege that USSF employed, supervised, or controlled the individuals alleged to have harmed Plaintiff, or that USSF operated the professional program in which the alleged misconduct occurred. And a coaching license or education credential—even if an individual defendant held one—is not employment, supervision, or control; the Complaint itself alleges that the individual defendants were employed, assigned, and supervised by others. Compl. ¶¶ 7, 9–11, 24–25.

The same deficiency exists here. By Plaintiff's own allegation, USSF promulgates national safety policies and occupies a regulatory position within American soccer. The Complaint does

not allege that USSF employed, assigned, supervised, or directly controlled the coach or players accused of misconduct. It does not allege that USSF operated the locker room or training facility, controlled the day-to-day conduct of the professional program at issue, or placed the alleged wrongdoers in supervisory positions over Plaintiff. The alleged general authority over the sport nationwide is precisely the kind of attenuated connection that courts hold insufficient to create a protective duty. That conclusion is all the more compelling under Utah law, which confines special relationships to only the most narrow of custodial categories. *See Beach*, 726 P.2d at 415–16; *Webb*, 2005 UT 80, ¶¶ 10–11. Utah's decision in *Graves* confirms the line. There, the court recognized a duty to control an employee who intentionally harms another because the defendant was the assailant's employer, controlled the premises, and knew it had both the ability and the need to control the employee. *Graves v. North Eastern Servs., Inc.*, 2015 UT 28, ¶¶ 24, 33–36, 345 P.3d 619 (adopting Restatement (Second) of Torts § 317). The Complaint alleges the opposite here: the individual defendants were employed and supervised by others, the alleged misconduct occurred at a facility USSF did not operate, and no well-pleaded fact shows that USSF had the ability or occasion to control any alleged wrongdoer. Compl. ¶¶ 7, 9–12, 20–25.

Plaintiff's own pleading confirms the absence of any custodial relationship with USSF. He alleges that he was "under the exclusive supervision of RSL during training, games, travel, education and locker room activities." Compl. ¶ 31. Supervision that was "exclusive" to another was, by definition, not USSF's. By Plaintiff's own account, USSF did not supervise him at all.

Nor can Plaintiff manufacture a duty from USSF's own safety policies. Plaintiff alleges that USSF "created sample policies for soccer organizations" and was "tasked with the training and implementation of said policies." Compl. ¶ 33. But policies describing or implementing an entity's existing role do not create a broader tort liability. In *Walker v. Anderson-Oliver Title Ins.*

18

*Agency, Inc.*, the Utah Court of Appeals rejected an analogous attempt to derive an additional duty from a company's public statements, internal policies, contractual materials, and employees' descriptions of its role. 2013 UT App 202, ¶¶ 15, 20-25, 309 P.3d 267. The court distinguished cases in which the defendant affirmatively assumed responsibilities "separate and apart" from its ordinary role. Absent such an undertaking, performing functions inherent in that role did not create a new duty. *Id.* ¶¶ 14-16, 24–28.

Here, the Complaint does not allege that USSF agreed to supervise or undertake responsibility of the locker room and personnel. A national governing body that requires its member organizations to adopt and enforce their own safety programs has not taken custody of a professional club's employee or undertaken to supervise a locker room it does not operate. Promulgating model standards for others to implement is not an assumption of a legal duty to every athlete at every member organization's facility. In short, standard-setting is not custody; regulation is not supervision; and affiliation is not control.

**B.  The statutes Plaintiff invokes create no duty and no private right of action.**

Plaintiff grounds USSF's alleged duty in the federal "Safe Sport Authorization Act" and in mandatory-reporting obligations. Compl. ¶¶ 33, 39. Neither supplies a legal duty owed to Plaintiff. The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq.*, and its SafeSport amendments create no private right of action; athletes may not sue national governing bodies to enforce the statute. *Michels v. U.S. Olympic Comm.*, 741 F.2d 155, 157-58 (7th Cir. 1984); *Behagen v. Amateur Basketball Ass'n*, 884 F.2d 524, 530 (10th Cir. 1989). Likewise, Utah's mandatory child-abuse reporting statute confers no private cause of action. *Doe v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 2004 UT App 274, ¶ 15 n.7, 98 P.3d 429; Utah Code §§ 80-2-602, 80-2-609. A statutory scheme that provides no private remedy cannot be repackaged

as a common-law tort duty owed by USSF to Plaintiff. *See Miller v. Weaver*, 2003 UT 12, ¶¶ 20–22, 66 P.3d 592 (declining to imply a private remedy where the statute contained none and assigned enforcement elsewhere). Congress made the remedial limit express—"neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter." 36 U.S.C. § 220505(b)(9). Congress also preserved (rather than created) duties under state law. *Id.* § 220524(b). Thus, the federal scheme supplies no cause of action and leaves Plaintiff to establish a duty under Utah law—which, for the reasons above, he cannot.

### C.  USSF's alleged conduct did not proximately cause Plaintiff's injuries.

Finally, the Complaint pleads no facts showing that any act or omission of USSF proximately caused Plaintiff's injuries. An event is the proximate cause of an injury only when the event, "in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 27, 215 P.3d 143 (quoting *Mitchell v. Pearson Enters.*, 697 P.2d 240, 245-246 (Utah 1985)). The alleged harms flow from the intentional acts and conduct of individuals whom Plaintiff himself alleges were employed and supervised by others. The chain Plaintiff posits—from USSF's national policymaking, through independent staffing and locker-room decisions not made by USSF, to the intentional torts of third parties—is far too attenuated to support liability as to USSF, and the intervening intentional conduct of third parties breaks the causal chain as a matter of law. *See Mitchell*, 697 P.2d at 245–46 (affirming summary judgment where the injury was inflicted by a third party's intentional criminal act that no alleged failure of the defendant was shown to have caused). For these reasons, Plaintiff did not adequately plead, and cannot show, proximate causation between any acts or omissions by USSF and the alleged harm to Plaintiff.

### CONCLUSION

For these reasons, USSF respectfully requests that the Court dismiss all claims against it for lack of personal jurisdiction under Rule 12(b)(2) and, in the alternative, for failure to state a claim under Rule 12(b)(6); and grant such further relief as the Court deems just.

DATED this 3rd day of August 2026.

STRONG & HANNI

By */s/ Scarlet R. Smith*
    Ryan P. Atkinson
    Scarlet R. Smith
    Davis P. Pope
    *Attorneys for Defendant United*
    *States Soccer Federation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August 2026, a copy of this **Motion to Dismiss** was served by the method indicated below, to the following:

Brian K. Jackson, Esq.          (X)   Electronic Filing
Brian K. Jackson LLC          ( )   U. S. Mail, Postage Prepaid
503 W. 2600 S. Suite 200        ( )   Hand Delivered
Bountiful, Utah 84010         ( )   Overnight Mail
brianj@bjacksonlaw.com       ( )   Email
Attorney for Plaintiff

                               (X)   Electronic Filing
Jeffrey Dewsnup            ( )   U. S. Mail, Postage Prepaid
Michael S. Anderson          ( )   Hand Delivered
Carissa A. Uresk            ( )   Overnight Mail
Parr Brown Gee & Loveless, P.C.   ( )   Email
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
manderson@parrbrown.com
curesk@parrbrown.com

Desirée F. Moore            (X)   Electronic Filing
Nelson M. Hua             ( )   U. S. Mail, Postage Prepaid
Venable LLP               ( )   Hand Delivered
227 West Monroe Street, Suite 1900  ( )   Overnight Mail
Chicago, Illinois 60606        ( )   Email
dmoore@venable.com
nmhua@venable.com
Attorneys for Defendant Utah Soccer
Stadium

Owner LLC dba Real Salt Lake, Utah  (X)   Electronic Filing
Soccer, LLC              ( )   U. S. Mail, Postage Prepaid
dba Real Salt Lake, and Ignacio    ( )   Hand Delivered
Hernandez               ( )   Overnight Mail
Ethan D. Thomas          ( )   Email
LITTLER MENDELSON, P.C.
222 Main Street, 5th Floor
Salt Lake City, UT 84101
edthomas@littler.com

Daniel L. Nash            (X)   Electronic Filing
Nathan J. Oleson          ( )   U. S. Mail, Postage Prepaid
Amanda S. McGinn        ( )   Hand Delivered

LITTLER MENDELSON, P.C. ( ) Overnight Mail
815 Connecticut Ave NW, Suite 400 ( ) Email
Washington, DC 20006


*/s/ Lexi Guyer-Miller*